(AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

**LODGED**
CLERK, U.S. DISTRICT COURT
04/13/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: _____GSA_____ DEPTUY

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
**4/13/2026**
CENTRAL DISTRICT OF CALIFORNIA
BY: **bm** DEPUTY

United States of America.

v.

PARUA LEE,

Defendant(s)

Case No.

2:26-mj-02166-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 11, 2026, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 841(a)(1) | Possession with intent to distribute controlled substances |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Andrew Youssef*
*Complainant's signature*

Andrew Youssef, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        4/13/26

*Judge's signature*

City and state:   Los Angeles, California

Hon. Charles Eick, U.S. Magistrate Judge
*Printed name and title*

AUSA: Mark K. Kanow (714) 338-2829

**AFFIDAVIT**

I, Andrew Youssef, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1.   I am a Special Agent with the United States, Homeland Security Investigations ("HSI"), where I have worked since September of 2024. During my tenure as a Special Agent, I have completed approximately six months of instruction at the Federal Law Enforcement Training Center (FLETC), in Glynco, Georgia, completing the Criminal Investigator Training Program (CITP) and HSI's add on training, Homeland Security Investigations Special Agent Training (HSISAT).

2.   Prior to my tenure as a Special Agent, I was a Legal Assistant with the United States Attorney's Office in the Central District of California for approximately eight months (February – September 2024). Additionally, prior to being a Legal Assistant, I was a Student Trainee with the United States Attorney's Office for approximately 1.5 years (September 2022 – February 2024).

3.   In May 2023, I earned a Bachelor of Science degree in Criminology and Criminal Justice, and certification in Crime Scene Investigation from California State University, Long Beach.

## II. PURPOSE OF AFFIDAVIT

4.   This affidavit is made in support of a criminal complaint against Parua LEE ("LEE") for a violation of 21 U.S.C.

§ 841(a)(1) (Possession with Intent to Distribute a Controlled Substance).

5.    This affidavit is also made in support of an application for a search warrant for the following digital device: one black colored Apple iPhone, passcode: "999999", seized from LEE's belongings on April 11, 2026 (the "SUBJECT DEVICE"), which is currently in the custody of HSI in El Segundo, California, and described more fully in Attachment A.

6.    The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances), 21 U.S.C. § 846 (conspiracy to possess with the intent to distribute controlled substances), 21 U.S.C. § 953(a) (unlawful exportation of controlled substances), 21 U.S.C. § 960 (knowing exportation of a controlled substance), and 18 U.S.C. § 554 (knowing exportation of any merchandise contrary to any law) (the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

7.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and databases.  This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrants and does not intend to set forth all my knowledge of our investigation into this matter.  Unless specifically

2

indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III.  <u>SUMMARY OF PROBABLE CAUSE</u>

8.  On April 11, 2026, Customs and Border Protection ("CBP") notified HSI that LEE had attempted to pass through a Transportation Security Administration ("TSA") checkpoint with an unusual shape in the groin area of his pants.  LEE was scheduled to depart LAX on an outbound flight to Tahiti Faa'a International Airport.  After TSA officers escorted LEE to a private screening room, LEE self-disclosed that he was carrying methamphetamine in his pants, which weighed approximately 840 grams.

### IV.  <u>STATEMENT OF PROBABLE CAUSE</u>

9.  Based on my involvement in this investigation, my conversations with other law enforcement officials involved in this investigation, and my review of reports and records connected to this investigation, I am aware of the following:

**A. LEE enters the TSA screening checkpoint with 840 grams of drugs on his person.**

10.  On April 11, 2026, LEE was scheduled to fly from LAX to Tahiti Faa'a International Airport, departing on Air Tahiti Flight TN 111 at approximately 11:00 p.m.

11.  From speaking with law enforcement officials, I know that when LEE entered the body scanner at the TSA checkpoint, Advanced Imaging Technology lanes 13/14, the scan revealed he had an anomaly in his groin area.

3

12.    TSA Officers asked LEE if he possessed any items in the groin area of his pants, and LEE affirmed. TSA officers then escorted LEE to private screening to further investigate the anomaly. LEE then self-disclosed to a TSA Officer that he was concealing methamphetamine and agreed to remove the item from his pants. TSA Officers removed the object wrapped in plastic wrap that was concealed in his clothing, namely, his pants and four undergarments.

13.    TSA proceeded to contact Los Angeles World Airports Police, who then in turn contacted CBP.  CBP, in turn, contacted the HSI LAX Duty Agent, i.e., me.  I arrived on scene at approximately 7:40 p.m.

14.    HSI Agents, including myself, cut through a portion of the package seized from LEE's person.  Inside the package was a white crystalline substance. Agents then proceeded to conduct a field test of the substance utilizing a Thermo Scientific Gemini Analyzer, which yielded a positive test for methamphetamine.

15.    HSI Agents proceeded to search through LEE's belongings, which included a fanny pack, that were placed in a TSA screening bin. Inside of the fanny pack, HSI agents recovered the SUBJECT DEVICE.

16.    At approximately 08:46 p.m., HSI agents took custody of LEE and the drugs, along with.

### IV. TRAINING AND EXPERIENCES ON DRUG OFFENSES

17.    Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

4

a.   Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

b.   Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs. The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

c.   Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices. This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal. In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

5

d.   Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

### V. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

18.   As used herein, the term "digital device" includes the SUBJECT DEVICE.

19.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.   Forensic methods may uncover electronic files or been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the Hard drive after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.   Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents,

6

programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

e.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

7

i.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

ii.    Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

20.    Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

///

///

8

## VI. CONCLUSION

21.  For all the reasons described above, I submit that there is probable cause to believe that LEE has committed a violation of Title 21, U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.  I further submit that there is probable cause to believe that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICE described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 13th day of
April 2026.

_____
HONORABLE CHARLES EICK
UNITED STATES MAGISTRATE JUDGE

9